NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
January, 1880.

## LUERS *v.* BRUNJES.

*In the matter of the accounting of* PETER BRUNJES *and*
LAWSON L. FULLER, *trustees, under the will of*
HENRY LUERS, *deceased.*

The decedent, who, at the time of his death in 1865, was a member of a
firm, left a will, disposing of his property for the benefit of his widow,
son and daughters, and directing his executors to cause the value of
his interest in the firm to be ascertained, and to transfer the same to
said firm, upon their executing an obligation to pay the amount, when
his son should attain majority, which occurred in 1870. The executors,
being members of the firm, allowed the funds of the testator to remain
in the business, drawing interest, but omitted to take the obligation as
required. In 1875 and 1876, the membership of the firm having
changed, and the business having deteriorated, said executors took,
from members of the firm, a bond and mortgages upon the firm lands,
which were already incumbered, to secure the balance due to the
estate. Subsequently their letters were revoked on their application,
and administration with the will annexed was granted to the son and
daughters, the securities being transferred to the administrators. It
appeared that the beneficiaries were unaccustomed to business,—the
mother being only partly acquainted with the English language,—and
that they had no sufficient notice, at the time, of the breach of trust
on the part of the executors, the securities being taken after the estate
had become manifestly imperiled.

*Held,* 1. That the executors had no right to speculate upon the result of a
plain neglect of their duty, and were liable for the loss growing out of
such neglect.

2. That the beneficiaries, under the circumstances, were not estopped from
holding the trustees liable, by the receipt of income, nor by the ulti-

mate acceptance of the custody of the estate, and the transfer of the securities. The essence of an estoppel is that a person has done or omitted to do something, which has induced a line of conduct by another, the denial of which thereafter would injure the rights of the one acting upon the representations or silence of him who seeks to enforce the liability against him.

Where a trustee claims a confirmation, by the *cestui que trust*, of the former's unlawful acts, in dealing with the estate, the rule is that the party confirming must not labor under any disability, must act deliberately, upon full information, without false suggestion or reservation on the part of the trustee, and must be aware of the law that he might impeach the transaction in a court of equity.

THIS was an accounting of Peter Brunjes and Lawson L. Fuller, trustees under the will of decedent.

The latter died in 1865. By his will he appointed said Brunjes and Fuller executors, and directed that his interest in the firm of Brunjes, Ockerschausen & Co., of which he was a member, at his death, should be ascertained and sold by the executors to the surviving members thereof, on their executing to the executors an obligation to pay the amount of his interest, so ascertained, when his son Henry, who, with his mother and sisters, were the beneficiaries, should become of age, which occurred February 1, 1870.

In 1867, the executors rendered a final account of their proceedings as such, and a decree was entered, on June 10, directing them to invest and keep invested the sum of about sixty thousand dollars, according to the provisions of the will. In May, 1877, their letters were revoked, upon their own application, and they were released from the trust imposed by the will, and letters of administration, with the will annexed, were granted to the son and daughters who petitioned for this accounting, and prayed that the executors personally make good the loss occasioned by the failure,

hereafter mentioned, to enforce the obligation of the firm to the estate, according to the terms of the will.

Subsequently to decedent's death, the executor Fuller became a member of the firm of Brunjes, Ockerschausen & Co., which firm carried on a sugar refining business in New York city, their capital consisting of the refining building and the lands on which it was situated, subject to mortgage incumbrances, and the business being carried on, as the auditor found, by buying crude sugars on credit, and selling for cash, or on short credit, whereby they were enabled to meet their obligations for the purchase of the crude material.

After the entry of the decree of 1867, the executors charged themselves with the balance of $63,110.54, and commenced their new account, and continued it to November 1, 1876, during which period, exclusive of said balance, they received the further sum of $44,503, the whole amounting to $107,613.54, and during the same period paid to the petitioners a portion of the capital of the estate, and all the interest due thereon, leaving a balance November 1, 1876, of $38,110.52, which up to that time had continued in said firm. About May 1, 1875, the executors took from Peter Brunjes and Henry J. Ockerschausen, members of said firm, a bond in the penal sum of $76,000, conditioned for the payment of $38,000 five years from May 1, 1875, with interest at seven per cent., payable semi-annually, and as collateral thereto a mortgage thereon, of the same date, on lots in this city, and about February 16, 1876, as further security for such payment, they executed to the executors another mortgage on other lots, all of which real estate was, with a slight exception, encumbered by first mort-

gages to the amount of $67,311, the two mortgages executed to said executors covering all the real estate owned by the said firm, except that there was a mistake in the description of one of the lots.

This additional mortgage, called the blanket mortgage, taken to secure the $38,000 bond, was, as the beneficiaries' counsel notified the executors, taken for such security as it might be worth, and the said bond and two mortgages to the executors were the only obligations that they took from said firm for the payment of the testator's interest, in pursuance of the provisions of the will. In May, 1877, the executors assigned said bond and mortgages to the petitioners, as administrators with the will annexed, and they were received by them as such.

The trustees' account, and objections filed thereto, were referred to an auditor, who took testimony, and reported that the trustees were not personally liable for loss to the estate, and that the petition should be dismissed. The matter came up for a hearing, on exceptions to the report. Further facts sufficiently appear in the opinion.

HORACE SECOR, JR., *for executors and trustees.*

ELLIOTT F. SHEPARD, *for exceptants.*

THE SURROGATE.—It is not only proved but conceded that the executors, who are accounting, after ascertaining the value of the interest of the testator in the firm of Brunjes, Ockerschausen & Co., transferred, according to the terms of the will of decedent, all his interest in said firm, but failed to take the obligation of that firm to pay the amount thus ascertained, at the ma-

jority of the son, February 1, 1870, according to the requirements of the will; and hence the only questions to be considered and determined are: has the estate suffered loss by reason of that neglect of a plainly imposed obligation, and if so, have the beneficiaries under the will done anything, by way of acquiescence or waiver, which estops them from charging the executors with the loss caused by their neglect of duty?

Some evidence has been given by the executors, tending to show that the firm of Brunjes, Ockerschausen & Co., at the death of the decedent, while it was in good credit, was largely indebted, and if then closed, the debts would have exhausted the whole property of the firm, and also that, at the time when the obligation, if it had been taken according to the duty of the trustees, would have matured, the firm was not in condition, if wound up, to have realized sufficient to pay the obligation; but the evidence is quite conclusive that at both periods the firm was in active business with a good credit, and that if the obligation had been outstanding at the latter date, it would have been paid. It also appears that, about a year after a transfer of all the interest of the decedent in the firm to the surviving partners was made, one of the firm, Hermann H. Brunjes, retired therefrom with $110,000 of its cash assets, and that the respective copartners after one of the trustees, Fuller, had become a member of the firm, had yearly withdrawn from the firm sums running from $3,000 to $12,000, each, amounting to $175,000; besides, there is no proof in the case as to the personal responsibility of said Hermann H. Brunjes, at the time when the obligation would have matured if taken according to the duty of the executors.

If this obligation had been taken, the personal liability of all the then partners for this claim, as well as the assets of the firm, would have been held for the payment of the obligation ; and the neglect of the executors to take that obligation clearly deprived the executors of the power to enforce it on the first day of February, 1870, and thus a loss to the estate occurred by neglect of the executors to do their duty ; for it is not pretended but that the obligation would have been entered into, if it had been demanded by the representatives of this estate; and if not, then certainly the executors would have been in a position to enforce a liquidation of the affairs of the firm, which obviously would have been seriously detrimental to the surviving partners, and have doubtless secured the execution of the obligation.

It is no answer to say, as one of the executors and trustees assumed to swear, that they did not take the obligation because they regarded it as a lien upon the property of the firm, and therefore equally well secured ; *first*, because it was a plain violation of duty to neglect to take it ; and in the *second* place, their assumption that it was a lien upon the effects of the copartnership was not true in any legal sense, neither as an actual nor as an equitable lien, which could have been enforced against the other creditors of the copartnership, or *bona fide* purchasers of the real estate. And besides, if it had been such lien, there was an essential failure to comply with the provisions of the will, in that the surviving partners were not thereby made personally liable for the obligation. It is clear, therefore, that the executors should be charged with the loss sustained by reason of this neglect, unless they have been relieved from the

obligation by some action of the beneficiaries ; but the extent of that loss cannot yet be determined, for the reason that, for the purpose of security, the administrators with the will annexed hold certain mortgages, which may yield something for the benefit of the estate and the protection of the trustees.    This brings me to the consideration of the testimony bearing upon the alleged estoppel, by acquiescence or otherwise, of the beneficiaries, and the release of the trustees.

The evidence shows, substantially, that the beneficiaries,—the widow being above sixty years of age, not able to write English, nor acquainted with accounts or business, and the two daughters, alike unacquainted with business,—received from the executors the interest on the amount estimated as the value of decedent's interest in the firm of which he was a member.    And it may be reasonably assumed that they understood the terms of the will requiring the execution, by the surviving members of said firm, to the executors, of the obligation. But it is worthy of special notice that there is no evidence in this case that they received interest from, or had any dealings with the surviving members of said firm, except as executors ; and I am not able to find any evidence in the case showing that they, the female beneficiaries, or Henry T. Luers, after he became twenty-one years of age, had any knowledge that the executors had failed to take the obligation, pursuant to the terms of the will, until about the time they took proceedings to compel further security, through their counsel, Mr. Shepard.    And while it does appear that they had some sort of knowledge, that the firm of Brunjes, Ockerschausen & Fuller had executed the first mortgage to the

executors, some time in 1876, by the mortgage being exhibited to the widow, and taken into the hands of the daughters, yet it does not appear that they understood the nature of the mortgage, whether it was or not a first and perfect security, and there is nothing in the case to indicate that they did not, as they had the right to, assume that the obligation of the firm had been taken, and that in pursuance of their duty the trustees had invested the money in security, upon property belonging to the firm ; and they had the right, under the circumstances, to assume that that mortgage was given and taken in conformity to the obligation of the will, and were not charged with the duty of examining to see whether that security was ample or otherwise, for that duty was imposed upon the trustees, as their representatives. Nor am I able to concur in the suggestion that, acting for himself and the other beneficiaries, Mr. Luers, after his majority, did anything to acquiesce in the plain neglect of duty on the part of the executors ; indeed, the very essence of an estoppel is, that a person has done or omitted to do something, which has induced a line of conduct by another, the denial of which thereafter would injure the rights of the one acting upon the representation or silence of him who seeks to enforce the liability against him ; and it is quite pertinent in this case to inquire what young Luers has done, in receiving interest from the late firm, through the executors or trustees, which has induced the executors to do, or neglect to do, what they would not, or would have done, but for such conduct on his part. It is nowhere suggested that they omitted to take the obligation under the direction or approval of either of the beneficiaries, nor is it pretended

that they omitted to seek further security from the firm, by reason of the neglect of the beneficiaries to demand it, or by reason of acquiescence in the fund remaining in the hands of the copartnership, without such obligation. Indeed, the evidence is quite conclusive that they did not so understand, nor were they apprized of the fact that the fund was left with the surviving partners without their obligation to pay at the majority of Henry Luers, or afterwards without security ; and the fact that they received interest from the executors in the shape of checks of the firm, was no notice to them that the obligation had not been taken by the trustees, nor any that the fund had not been properly invested, according to the terms of the will, after February 1, 1870.  So that, in respect to the first mortgage taken by the trustees, it must be held to have been taken upon their responsibility as such ; and if they claim that it was an investment, pursuant to the provisions of the will, instead of an effort to secure what they might, notwithstanding their neglect to obtain the obligation, it was a security not authorized, upon property which had been incumbered by mortgages prior thereto, and for that reason they are liable for mis-investment.

The next question to be considered is whether the so called " blanket mortgage," required by the beneficiaries' counsel, was such a dealing with the property by the beneficiaries, as to relieve the trustees from any further liability for their previous neglect.  The mere receipt of the mortgage under such circumstances would not, in my opinion, act as a release, either legally or equitably, of the trustees, for such neglect of duty, even if the mortgage had been received by them in

the expectation that it would prove ample security for the whole liability. But the proof is quite conclusive that the second mortgage, called "the blanket mortgage," of date February 16, 1876, was given on the request of the counsel for the beneficiaries, not in release of the trustees' liability, nor was it received in satisfaction of any such liability, but it was demanded by the counsel as the best that could be procured under the circumstances, they refusing to give other security; and the fact that the members of the firm and the trustees proposed to convey the whole property, thus mortgaged, to the administrators with the will annexed, subject to all incumbrances, for a release of the firm and the trustees from all liability, and that it was rejected by the beneficiaries, is the highest evidence, if any other were needed, that the blanket mortgage was not received in satisfaction.

It is true that the executors claim that they are released from further liability, by the acquiescence of the beneficiaries, through the acceptance of the custody of the estate, and their approval of the receipt of the so called "blanket mortgage;" but, as has already been stated, the evidence does not sufficiently charge the beneficiaries with a knowledge of the facts and the trustees' liability.

In Cumberland Coal and Iron Company v. Sherman (30 *Barb.*, 553), Mr. Justice DAVIES, in discussing the question of ratification or confirmation of a sale to a trustee by the *cestui que trust*, which is somewhat analogous to the pretended acquiescence and confirmation in this case, says, that the rules as to confirmation are, that the party confirming must not labor under dis-

ability, that the confirmation must be a deliberate act, and that the court will watch it with the utmost strictness, and will not allow it to stand, but on the very clearest evidence ; that there must be no false suggestion or reservation, but that the *cestui que trust* must be made acquainted with all the material circumstances of the case ; that the confirming party must be aware of the law,—that he might impeach the transaction in a court of equity,—citing numerous authorities.

In Adair *v.* Brimmer (74 *N. Y.*, 539),—which is a case where the executors had disposed of the testator's real estate for the purpose of forming a mining corporation, and received stock of the corporation in payment therefor,—there was an effort made to show that the *cestui que trust* had ratified the sale and investment ; but the same doctrine was asserted, and the executor held liable.

The confirmation of the conclusions reached by the auditor would, in my opinion, establish a most dangerous and pernicious precedent, for it would seem to invite trustees to speculate upon the result of a plain neglect of duty, and to impose upon the *cestui que trust* not only proof of the violation of duty, but in order to establish the loss growing out of such neglect, to throw the *onus* upon them of showing that, if the duty had been performed, and the obligation taken in conformity to the will, that obligation could certainly have been enforced to its full extent, by strict process of law. I am not willing either to establish or concur in any such principle. I am, therefore, of the opinion that the trustees are chargeable personally with the loss which has been sustained by this estate, by reason of their

neglect to take the obligation, and enforce it according to the provisions of the will. Nevertheless, they should be credited with all sums which have been realized through the executors and trustees, from the late firm of Brunjes, Ockerschausen & Co., and the amount of such loss, it seems to me, cannot be determined unless by consent of parties, without the foreclosure of the subsisting mortgages executed to the executors, and assigned to the administrators with the will annexed. The auditor's report, in the particulars above suggested, should be modified to conform hereto, and the exceptions to his conclusion that the trustees are not liable, and that the petition should be dismissed, should be sustained.

Ordered accordingly.